NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE PROVIDENT BANK,<br><br>Plaintiff,<br><br>v.<br><br>ANDRON CONSTRUCTION CORP. and BENJAMIN KURZBAN & SON CONTROL, INC.,<br><br>Defendant. | Civil Action No. 2:12-cv-3679 (CCC)(JAD)<br><br>**OPINION** |

This matter comes before the Court upon motion by defendant Benjamin Kurzban & Son Control, Inc. ("Kurzban") to (i) dismiss the Complaint for lack of personal jurisdiction and/or *forum non conveniens*; or, in the alternative, (ii) transfer venue pursuant to 28 U.S.C. § 1404(a) to either the United States District Court for the Southern District of New York or the United States District Court for the Eastern District of New York. Pursuant to Rule 78 of the Federal Rules of Civil Procedure, no oral argument was heard. Upon consideration of the parties' submissions, and for the reasons stated below, Kurzban's motion (i) to transfer is **granted** and (ii) motion to dismiss is **denied** as moot. This case shall be transferred to the United States District Court for the Southern District of New York

I.  **BACKGROUND.**

　　A.  The Parties and the Agreement.

This is a breach of contract action brought by plaintiff The Provident Bank ("Plaintiff"), as assignee of the rights Nacerima Industries, Inc. ("Nacerima"), a New Jersey corporation that

1

filed a voluntary Chapter 11 petition in the United States Bankruptcy Court for the District of New Jersey. (Compl. ¶ 14, ECF No. 1-1).[1]

Plaintiff alleged that on April 9, 2010, Nacerima entered into an agreement (the "Agreement") with defendant Andron Construction Corp. ("Andron")[2] and its subcontractor Kurzban, both of which are New York corporations, regarding certain asbestos hauling and disposal services from a construction project located in Manhattan, New York. (Id. at ¶ 3). Under the Agreement, Kurzban agreed to pay Nacerima to remove asbestos from a construction site operated by defendant New York City School Construction Authority, located at 1970 Amsterdam Avenue, New York, New York 10032 (the "Site"). (Opp. Br. 2, ECF No. 11).[3] The Agreement required Nacerima to remove asbestos from the Site and transport it to "disposal facilities approved by the State of New Jersey." (Id.). Plaintiff alleged that from approximately May 3, 2012 through June 29, 2010, Nacerima removed asbestos from the Site pursuant to the Agreement and transported it into the State of New Jersey using vehicles registered in New Jersey. (Id.). Upon Nacerima's completion of its services as required by the Agreement, an outstanding amount of $156,563.60 remained due.[4] Plaintiff alleged that, to date, Kurzban has not paid this debt. (Id.).

---

[1] The action was initially brought in the Superior Court of the State of New Jersey, Law Division, Hudson County, and was removed to this Court by Defendant on June 18, 2012. (Notice of Removal, ECF No. 1).

[2] The term "Defendants," as used herein, shall refer to defendants Kurzban and Andron together.

[3] Andron submitted in affidavit in support of Kurzban's motion to transfer the action to the United States District Court for the Southern District of New York. (Affidavit of Don Benson ("Benson Aff."), ECF No. 12). Therein, Andron asserted that it did not contract directly with Nacerima. (Id. ay ¶ 3). Rather, Andron's subcontractor, Kurzban, entered the Agreement. (Id.). Andron asserted that it never agreed to pay Kurzban's debt to Nacerima. (Id.).

[4] Plaintiff alleged that, pursuant to the Agreement, Nacerima timely billed Defendants a total of $666,563.60. (Compl. ¶ 10, ECF No. 1-1). Defendants allegedly paid $510,000.00 towards this amount, which leaves the outstanding balance of $156,563.60 sought by Plaintiff in the Complaint. (Id.).

2

B. <u>Nacerima's Chapter 11 Proceeding and Assignment to Provident Bank.</u>

According to the Complaint, on or about January 28, 2011, Nacerima filed a voluntary Chapter 11 petition in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court."). (Compl. ¶ 13, ECF No. 1-1). The Bankruptcy Court found that Plaintiff had perfected its security interest in all of Nacerima's accounts receivable as of January 28, 2011. (Opp. Br. 3, ECF No. 11). The Bankruptcy Court dismissed Nacerima's petition on April 2, 2012 and ordered Nacerima to transfer all of its remaining assets, including accounts receivable, to Plaintiff. (<u>Id.</u>).

C. <u>The Complaint and the Motion to Dismiss and/or Transfer.</u>

The Complaint, filed by Plaintiff as assignee of the rights Nacerima, asserted breach of contract and unjust enrichment causes of action against Defendants. On August 10, 2012, Kurzban filed the instant motion, which seeks to (i) dismiss the Complaint based on lack of personal jurisdiction or *forum non conveniens*; or (ii) transfer the action to either the United States District Court for the Southern District of New York or the United States District Court for the Eastern District of New York. Andron did not join in the motion to dismiss for lack of personal jurisdiction, but submitted an affidavit in support of Kurzban's motion to transfer venue to the Southern District of New York.

With respect to the motion to dismiss, Kurzban argued that because it is a small, family owned New York corporation that has no relationship with New Jersey and lacks even minimal contacts with New Jersey, there is no personal jurisdiction enabling this action to be maintained in this Court.[5] (Br. Supp. Mot. Dismiss and/or Transfer 5, ECF No. 8-1). Kurzban alleged that it does no business or work in New Jersey, and does not own any property in this State. (Aff.

---

[5] The parties do not dispute that Kurzban lacked the "continuous and systematic activities" in New Jersey necessary to confer general jurisdiction. Thus, the Court will limit its analysis to whether specific jurisdiction exists.

3

Mitchell Kurzban ("Kurzban Aff.") ¶ 3, ECF No 8-2). Kurzban is only licensed to perform asbestos removal in New York, which is where all of its employees, equipment, books, records and projects are located. (Id.). Kurzban certified that it does not advertise in New Jersey, and markets no products in New Jersey. (Id.). In addition, Kurzban alleged that it was Nacerima who physically came into New York to bid on a construction job, negotiated and entered the Agreement in New York, and performed the majority of its services at the Site in New York. (Br. Supp. Mot. Dismiss and/or Transfer 2, ECF No. 8-1). Kurzban's President, Mitchell Kurzban, certified that his only meeting with Nacerima in connection with the Agreement took place in New York, and that he never met with Nacerima or visited its offices in New Jersey. (Kurzban Aff. ¶ 7, ECF No. 8-2). Kurzban argued that Nacerima submitted bills for payment to New York, which were paid by Kurzban in New York and drawn on checks from a New York Bank. (Id.). Finally, Kurzban alleged that when this dispute initially arose, Nacerima filed a lien on the underlying property in New York in the full amount of its claim. (Id. ¶ 6).

In response, Plaintiff countered that Nacerima indeed had purposeful contacts directed at New Jersey, and that this lawsuit arises directly out of these contacts. (Opp. Br. 8, ECF No. 11). Plaintiff argued that Kurzban telephoned Nacerima in New Jersey on several occasions to negotiate the terms of the Agreement, knew that it was contracting with a New Jersey corporation, and sent the signed Agreement to Nacerima in New Jersey. (Id.). Plaintiff also pointed to the fact that Nacerima issued invoices out of New Jersey, and that Kurzban made payments to Nacerima in New Jersey, as evidence of Kurzban's purposeful contacts with New Jersey. (Id. at 9). Finally, Plaintiff argued that the Agreement itself contemplated that Nacerima was to remove asbestos from the Site and transport the material to "disposal facilities approved

by the State of New Jersey." (Id. at 8). Thus, Plaintiff argued that sufficient contacts exist to justify the exercise of specific jurisdiction in this case. The Court disagrees.

## II. ANALYSIS.

### A. Motion to Dismiss the Complaint for Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2).

To ascertain whether a court has personal jurisdiction over a defendant, a federal court sitting in diversity jurisdiction must conduct a two-step analysis. Howard Johnson Int'l, Inc. v. DKS, LLC, No. 08-2316 (JAG), 2009 WL 2595685, *1, *3 (D.N.J. Aug. 20, 2009). First, the court must look to the forum state's long arm statute to determine if personal jurisdiction is permitted over the defendant. Id. Second, the court must determine whether the exercise of jurisdiction violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Id. (citing IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998); Vetrotex Certainteed Corp. v. Consol. Fiber Glass Products Co., 75 F.3d 147, 150 (3d Cir. 1996)). In this forum, the inquiry collapses into a single step because New Jersey's long arm statute permits the exercise of personal jurisdiction "coextensive with the due process requirements of the United States Constitution." Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 96 (3d Cir. 2004) (citing N.J. Ct. R. 4:4-4(c)).

The Fourteenth Amendment of the United States Constitution "limits the reach of long-arm statutes so that a court may not assert personal jurisdiction over a nonresident defendant who does not have certain minimum contacts with the forum such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 436–37 (3d Cir.1987) (citation and internal quotations omitted). Accordingly, this Court may exercise personal jurisdiction over a non-resident defendant if the defendant has "certain minimum contacts with [New Jersey] such that

the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Henry Heide, Inc. v. WRH Products Co., Inc., 766 F.2d 105, 108 (3d Cir. 1985) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

1. General and Specific Jurisdiction.

Once a defendant files a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden to establish sufficient facts to show that jurisdiction is proper. Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992). While a court must accept the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff, Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 368 (3d Cir. 2002) (quoting Carteret Savings Bank, FA v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir. 1992)), the court must still examine any evidence presented with regard to disputed factual allegations. See, e.g., Eurofins Pharma US Holdings v. BioAlliance Pharma SA, 623 F.3d 147, 155-56 (3d Cir. 2010) (examining the evidence supporting the plaintiff's allegations); Patterson v. FBI, 893 F.2d 595, 603-04 (3d Cir. 1990) ("A Rule 12(b)(2) motion, such as the motion made by the defendants here, is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies. Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence."). The plaintiff "need only establish a prima facie case of personal jurisdiction." Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004). However, a plaintiff may not "rely on the bare pleadings alone" in order to withstand a motion to dismiss for lack of personal jurisdiction; "[o]nce the motion is made, plaintiff must respond with actual proofs, not mere allegations." Patterson, 893 F.2d at 604 (internal citations omitted).

A district court can assert either specific or general jurisdiction over a non-resident defendant. See Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414-415 & n. 9 (1984). A court may exercise general jurisdiction when a defendant has "continuous and systematic contacts" with the forum state. Id. The defendant's "contacts need not relate to the subject matter of the litigation." However, the plaintiff must show more than mere minimum contacts with the forum state. Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir.1987). General jurisdiction requires a 'very high threshold of business activity.'" Ameripay, LLC v. Ameripay Payroll, Ltd., 334 F. Supp. 2d 629, 633 (quoting Compagnie des Bauxites de Guinea v. Ins. Co. of N. America, 651 F.2d 877, 891 (3d Cir. 1981)). Moreover, the facts required to establish general jurisdiction must be extensive and persuasive. Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas, 675 F.2d 587, 589 (3d Cir. 1982).

On the other hand, specific jurisdiction arises where the claims arise out of the defendant's forum-related activities. See Helicopteros, 466 U.S. at 413-14. In order to establish specific jurisdiction, the relevant inquiry is: (1) whether the defendant purposefully directed its activities at the forum; (2) whether the litigation arises out of or relates to at least one of these activities; and (3) whether the exercise of jurisdiction otherwise comports with traditional notions of fair play and substantial justice. O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007). In establishing specific jurisdiction, it is not required that the defendant be physically located in the state while committing the alleged acts. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985). Nor is specific jurisdiction defeated merely because the bulk of harm occurred outside the forum. Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 780 (1984). A single act may satisfy minimum contacts if it creates a substantial connection with the forum. Burger King, 471 U.S. at 476 n. 18.

2. <u>Discussion.</u>

The Court finds that Kurzban's contacts with New Jersey are insufficient to establish specific jurisdiction in the District of New Jersey.

As correctly pointed out by Kurzban, it was Nacerima who initially reached into New York to bid on a contract concerning a construction site located in New York; Kurzban did not reach out to Nacerima in New Jersey to establish the business relationship. (Br. Supp. Mot. Dismiss and/or Transfer 2, ECF No. 8-1). All of the in-person negotiations regarding the Agreement between Nacerima and Kurzban took place in New York, and Kurzban never visited Nacerima's offices in New Jersey. (Kurzban Aff. ¶7, ECF No. 8-1). Although the Court acknowledges that a defendant need not be physically present in a state to have "minimum contacts" sufficient to confer personal jurisdiction, see <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 476 (1984), this District has also declined to find specific jurisdiction based on the mere fact that a defendant communicated with a plaintiff based in New Jersey without any further indication that such defendant "purposefully availed" itself of New Jersey law within the context of those communications. See <u>Special Purpose Vehicle v. Celello</u>, No. 11-7374, 2012 WL 3598258, *1, *3 (D.N.J. Aug. 20, 2012). Here, notwithstanding that Kurzban was aware it was entering a contract with a New Jersey corporation, there is little other evidence in the record suggesting that it "purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." <u>IMO Indus., Inc. v. Kiekert AG</u>, 155 F.3d 254, 259 (3d Cir. 1998) (citations omitted). Nacerima physically came into New York to bid on the job, the Site was located in New York, Kurzban is only licensed to perform asbestos removal in New York, and the Agreement is governed by New York law. (Kurzban Aff. ¶ 3, ECF No. 8-2). The Court also notes that Nacerima itself filed a lien on the underlying

property in New York with respect to this dispute. (Id. at ¶ 6). Consequently, Plaintiff failed to meet its burden of establishing personal jurisdiction over Kurzban in the District of New Jersey.

### B. Motion to Transfer Pursuant to 28 U.S.C. § 1404(a).

Although the Court's inquiry could end based on its finding that it lacks personal jurisdiction over Kurzban, Kurzban alternatively moved for the Court to transfer the case to either the United States District Court for the Southern District of New York (where Andron and the Site are located) or the United States District Court for the Eastern District of New York (where Kurzban is located) pursuant to 28 U.S.C. 1404(a). Andron joined in the request to transfer the action to the Southern District of New York. This Court finds that recommending transfer to the Southern District of New York is the more complete and, therefore, better course of action.

The decision of whether to transfer a case is committed to the trial court's sound discretion. Cadapult Graphic Sys. v. Tektronix, Inc., 98 F. Supp. 2d 560, 564 (D.N.J. 2000); Days Inns Worldwide, Inc. v. RAM Lodging, LLC, No. 09-2275, 2010 WL 1540926, at *2 (D.N.J. April 14, 2010). Pursuant to 28 U.S.C. § 1404(a), the Court may transfer a case to any venue where it may have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). "The purpose of § 1404(a) is to avoid the waste of time, energy and money and, in addition, to safeguard litigants, witnesses, and the public against avoidable inconvenience and expense." Rappoport v. Steven Spielberg, Inc., 16 F. Supp. 2d 481, 497 (D.N.J. 1998).

The three factors a court must consider when determining whether to transfer a matter pursuant to § 1404(a) are: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. Id. In addition to these statutory factors, the Third

Circuit established a list of public and private interests that should also be considered when deciding whether to transfer an action:

> The private interests have included: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).
>
> The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

Johnson v. RiteAid, No. 10-2012, 2011 WL 2580375, at *2-3 (D.N.J. June 28, 2011) (citing Jumara v. State Farm Ins. Co., 55 F.3d 873, 879-80 (3d Cir. 1995)).

Thus, the Court must engage in a two part analysis to determine whether a motion to transfer venue should be granted. As a threshold matter, the Court must decide whether the transferee district has proper jurisdiction and venue, such that the case could have been brought in the transferee district in the first instance. Lawrence v. Xerox Corp., 56 F. Supp. 2d 442, 450 (D.N.J. 1999). The Court must then conduct an "individualized, case-by-case consideration of convenience and fairness" regarding which forum is most appropriate to consider the case. Id. "There is no rigid rule governing a court's determination; 'each case turns on its facts.'" Id. (citing Lacey v. Cessna Aircraft Co., 862 F.2d 38, 43 (3d Cir. 1988) (internal citations omitted)).

1. The Instant Matter Could Have Been Brought in the Southern District of New York.

As a threshold matter, this Court must decide whether the transferee forum has proper jurisdiction and venue to hear the instant action. Where subject matter jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1391 provides that venue is proper in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. § 1391(b)(2). Under this standard, it is possible for venue to be proper in more than one district. Zapf v. Bamber, CIV.A. No. 04CV3823SSB, 2005 WL 2089977, *1, *2 (D.N.J. Aug. 26, 2005) (citing Cottman Trans. Sys., Inc. v. Martino, 36 F.3d 291, 294 (3d Cir.1994)). Here, the Court finds that jurisdiction and venue would be appropriate in the Southern District of New York. Andron is a New York corporation with its principal place of business in Westchester, New York, which is encompassed by the Southern District of New York. (Benson Aff. ¶ 2, ECF No. 12). Kurzban implicitly consented to venue in the Southern District of New York by moving to transfer the action there. In addition, the Site is located in the Southern District of New York. (Br. Supp. Mot. Dismiss and/or Tranfer 3, ECF No. 8-1). Nacerima, although a New Jersey corporation, contracted with Andron and Kurzban in New York. (Id. at 13). In addition, a "substantial part" of the events giving rise to Plaintiff's claims indisputably occurred in New York, which is where the Nacerima performed its services and where the Agreement was negotiated.

Having found that this action could have originally been brought in the Southern District of New York, this Court now turns to whether the § 1404(a) factors, as well as private and public interest factors, weigh in favor of such a transfer.

## 2. Private and Public Factors.

Plaintiff's primary argument in opposition to transfer is that its choice of forum is entitled to deference. (Opp. Br. 1-2, ECF No. 6). However, although a plaintiff's choice of forum is typically afforded great deference, it is not a right and "should not receive dispositive weight." Jumara v. State Farm Ins. Co., 55 F.3d 873, 880 (3d Cir. 1995). The Court finds this particularly true where, as here, it determined that it lacks personal jurisdiction over at least defendant Kurzban. To afford ultimate consideration to Plaintiff's initial choice of forum in New Jersey would leave Plaintiff without a defendant – which is a result the Court finds counterintuitive and avoidable, particularly given Kurzban's request to transfer the action to a jurisdiction where it concedes the court would have personal jurisdiction over it.

This consideration, together with the private and public factors a court must consider, counsels in favor or transfer. Clearly, litigating this matter in New York is more convenient for Defendants, which are located in New York. In addition, much of Plaintiff's opposition brief argued that factors such as convenience of the parties, convenience of the witnesses, and location of the books and records would not impose a significant burden on Defendants because of the relative proximity of the two forums and the lack of any suggestion that witnesses or documents would be unavailable at trial. This reasoning is equally applicable to support transfer. Similarly, the public interests that the Court must weigh when deciding whether to transfer an action will be equally served, in this Court's view, by either forum.

Taking all of the foregoing into consideration, and given that Plaintiff has not indicated that it would prefer to have its case dismissed against Kurzban rather than transferred, the Court shall grant Kurzban's alternate motion to transfer pursuant to 28 U.S.C. § 1404(a).

## IV. CONCLUSION

For the foregoing reasons, Kurzban's motion to transfer the case to the United States District Court for the Southern District of New York is **granted**. Kurzban's motion to dismiss is **denied** as moot.

                                                                _____ 3/19/13
                                                                Joseph A. Dickson, U.S.M.J.

cc.      Honorable Claire C. Cecchi, U.S.D.J.